IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERNEST K. MANDERS, M.D., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 02-1341 |
| | ) |
| McGHAN MEDICAL CORPORATION and INAMED MEDICAL PRODUCTS CORPORATION | ) |
| | ) |
| Defendants. | ) |

MEMORANDUM ORDER

CONTI, District Judge.

United States Patent No. 4,575,780 ("the '780 patent"), entitled "Tissue Expander and Method," includes claims directed to a medical device that expands soft tissue and to methods for differentially expanding soft tissue. Defendants McGhan Medical Corp. and Inamed Medical Products Corp. ("defendants") filed a Motion for Reconsideration of the Claim Construction Order Entered on February 23, 2006. Ernest Manders ("plaintiff") filed an opposition to that motion, and defendants filed a reply to plaintiff's opposition.

In the Memorandum Opinion of this court dated February 23, 2006, the court construed a number of terms whose construction is disputed by the parties. In their Motion for Reconsideration, defendants object to three of the court's constructions. Defendants essentially attempt to relitigate issues they previously raised in the above-captioned action, and the court will deny defendants' motion.

*Standard of Review*

An opinion issuing from a *Markman* hearing is an interlocutory decision, rather than a final judgment or order.  Bausch & Lomb, Inc. v. Moria S.A., 222 F. Supp. 2d 616, 669 (E.D. Pa. 2002).  Because of the interlocutory nature of claim construction, courts have different views of the effects of a claim construction decision.  One view is that a district court has discretion to review and amend the claim construction at any time prior to final adjudication, and may even do so *sua sponte*.  Bateman v. Por-Ta Target, Inc., Civ. No. 01-5599, 2004 U.S. Dist. LEXIS 28487, at *13 (N.D. Cal., July 28, 2004) (citing Sofamor Danek Group, Inc. v. DePuy-Motech, Inc., 74 F.3d 1216, 1221 (Fed. Cir. 1996)); see Jack Guttman, Inc. v. KopyKake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002) ("District courts may engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its understanding of the technology evolves.") Other courts, however, view *Markman* hearings as having a "special finality," which would argue against an amendment at will.  See TM Patents, LP v. IBM Corp., 72 F. Supp. 2d 370, 378n.2 (S.D.N.Y. 1999).

These differences in opinion may be due, in part, to the fact that district courts have wide latitude in how they conduct claim construction proceedings.  See Ballard Med. Prods. v. Allegiance Healthcare Corp., 268 F.3d 1352, 1358 (Fed. Cir. 2001).  These proceedings "run the gamut from mid-trial sidebar conferences . . . to virtual mini-trials extending over several days and generating extensive evidentiary records."  MediaCom Corp. v. Rates Tech., Inc., 4 F. Supp. 2d 17, 21 (D. Mass. 1998).

District courts have held that while they may reconsider claim construction orders "when it is consonant with justice to do so," a court "should grant motions for reconsideration sparingly."  Bausch & Lomb, 222 F. Supp. 2d at 669.  Other courts have gone so far as to treat a motion for

reconsideration of a *Markman* ruling as stringently as they would treat a motion for reconsideration of a final judgment or order, ruling that such motions will be granted only upon: (1) an intervening change in controlling law; (2) the emergence of new evidence not previously available; or (3) the need to correct a clear error of law or to prevent a manifest injustice. See Agere Systems, Inc. v. Broadcom Corp., Civ. No. 03-3138, 2004 U.S. Dist. LEXIS 17811, at *3 (E.D. Pa., Sept. 7, 2004); AstraZeneca AB v. Mut. Pharm. Co., Civ. No. 00-4731, 2002 U.S. Dist. LEXIS 20311, at *4 (E.D. Pa., Oct. 3, 2002), rev'd and remanded on other grounds, 384 F.3d 1333 (Fed. Cir. 2004); General Instrument Corp. v. Nu-Tek Elecs. & Mfg., 3 F. Supp. 2d 602, 606 (E.D. Pa. 1998), aff'd, 197 F.3d 83 (3d Cir. 1999).

In this case, the parties, having disagreed on the interpretation of numerous claim terms, filed lengthy opening briefs in which they advocated a particular construction of those terms. The parties then filed briefs in response, in which they further developed their arguments. Finally, the court held a formal *Markman* hearing, with three days of testimony (September 23rd, October 7th, and October 18th, 2004) that produced 383 pages of transcripts. (Doc. Nos. 132, 133, 134.) The record included testimony from plaintiff and owner of the '780 patent, Dr. Manders (Doc. No. 132), as well as from Dr. Fisher, an expert in plastic surgery and breast reconstruction (Doc. No. 133).

Where there is, as here, an extensive record with a procedure embodying the formality for the claim construction proceedings, it is appropriate to view the standard of review to be used in considering a motion for reconsideration in a stricter manner in consideration of the interests of judicial economy. Having devoted several days to hearings and after reviewing an extensive record, the court issued its opinion on claim construction. This court will, therefore, examine the motion in light of the record and traditional standards of review for motions for reconsideration. See Anthony

M. Garza, <u>Collateral Estoppel and Claim Construction Orders: Finality Problems and Vacatur Solutions</u>, 6 Colum. Sci. & Tech. L. Rev. 4 (2005) (discussing the collateral estoppel effect of claim construction orders, and suggesting that the granting or denial of such collateral estoppel effect depends, in large part, on the level of formality of the earlier *Markman* hearings).[1]

*Discussion*

The court construed nine terms or phrases contained in claim 24 of the '780 patent, ten terms or phrases contained in claim 31, and also construed claims 25, 32, 33, 34, 35, 37, 39, 40, 44, and 46.

**I.     "Whereby" Clause of Claim 31**

The final clause of claim 31 has been referred to as the "whereby" clause.[2]  As noted above, both sides had an opportunity to brief extensively their respective positions on how to interpret this clause.  The parties also devoted significant time to this clause at the *Markman* hearing.  (Doc. No. 132, 184:24-185:22); (Doc. No. 134, 13:17-18:19, 27:3-28:7, 36:4-11, 57:8-66:3).

---

[1] Some courts have given collateral estoppel effect to a *Markman* decision, <u>see, e.g.</u>, <u>TM Patents</u>, 72 F. Supp. 2d at 379, while other courts have denied collateral estoppel effect to such decisions.  <u>See, e.g.</u>, <u>Kollmorgen Corp. v. Yaskawa Electric Corp.</u>, 147 F. Supp. 2d 464, 469 (W.D. Va. 2001), <u>dismissed by</u> Civ. No. 02-1057, 2002 U.S. App. LEXIS 11799, at *1 (Fed. Cir., Mar. 18, 2002).  The courts that agree with <u>TM Patents</u> reason that collateral estoppel helps preserve judicial precedent and that it removes the ability of wealthy litigants to buy away unfavorable preclusive effects through settlement.  Garza, <u>supra</u>.  The courts that agree with <u>Kollmorgen</u> reason that claim construction rulings are tentative, there is no opportunity for review by the United States Court of Appeals for the Federal Circuit of claim constructions that are unattached to final judgments, and a party would lack an incentive to settle after receiving an adverse *Markman* ruling if it would nonetheless be considered to have collateral estoppel effect in future cases.  <u>Id.</u>

[2] The clause reads, ". . . whereby fluid injected through the port and into a chamber of an implanted device first expands both the first and second cover portions together with the tissue overlying such portions and then further expands the second cover portion together with the tissue overlying the second cover portion only to form a differentially expanded tissue flap."

Defendants argued that the word "only" in the "whereby" clause should apply to the second cover portion (and the tissue overlying that second cover portion), so that, after reaching the taut position, only the second cover portion could expand further, and not the first cover portion.  Plaintiff argued that the clause meant that, after reaching the taut position, both the first and second cover portions could expand further, but that only the tissue overlying the second cover portion would expand as a result.

After careful consideration of the briefs and the argument at the *Markman* hearing, the court construed the term in agreement with plaintiff's position.

Defendants argue that the court made mistakes that require the court to amend its claim construction order.  Defendants fail to show the availability of new evidence not previously available or an intervening change in controlling law to support their motion for reconsideration.  Defendants' motion for reconsideration, therefore, is best understood as premised on a need to correct a clear error of law or to prevent manifest injustice.  Defendants, however, did not meet this burden.

Defendants assert that the court erred by paying too much attention to the clause's grammatical structure and failed to consider intrinsic evidence that shows a slavish relationship between expansion of the medical device's cover and expansion of the tissue overlying the cover. The February 23, 2006 order discusses the general principles of claim construction. As noted there, while intrinsic evidence, such as that from the written description and prosecution history, may be considered in more complicated situations, Teleflex, Inc. v. Ficosa North America Corp., 299 F.3d 1313, 1324 (Fed. Cir. 2002), there is no need to do so when, as here, the meaning of a clause is readily apparent.

Defendants also argued that a "whereby" clause can constitute a limitation to other claim

clauses, citing Griffin v. Bertina, 285 F.3d 1029, 1034 (Fed. Cir. 2002). Griffin, however, dealt with a disputed claim that was a "wherein" clause, and not a "whereby" clause. In that decision, the United States Court of Appeals for the Federal Circuit held that the "wherein" clause was limiting, and noted that Griffin had relied on case law which actually identified "whereby" clauses as nonlimiting. The court of appeals recognized that the words are not interchangeable, as "'wherein' is an adverb and 'whereby' is a conjunction," and that decisions concerning "wherein" clauses were "all fact-specific." Id. This court likewise recognizeed that the words are not interchangeable, and that based upon the specific facts of this case, Claim 31's "whereby" clause is nonlimiting.

Defendants continue to argue that the "whereby" clause be considered a limitation, this time providing citations for the proposition that claim terms and clauses must be interpreted in context of the entire claim. Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005); ACTV, Inc. v. Walt Disney Co., 346 F.3d 1082, 1088-90 (Fed. Cir. 2003); Hockerson-Halberstadt, Inc. v. Converse Inc., 183 F.3d 1369, 1374 (Fed. Cir. 1999). This court *has* read the "whereby" clause in the context of the entire claim. With respect to another clause of claim 31,[3] plaintiff had argued that "preventing further expansion" meant "hindering from further expansion," while defendants had argued that it meant, "to keep further expansion from happening." The court examined the specification in analyzing the "preventing" clause, and concluded that the words used to describe the expansion were set in relative, rather than absolute terms. Therefore, the court construed the term in agreement with plaintiff's position. The court's construction of the "whereby" clause agrees with this relativistic interpretation: after reaching the taut position, the first cover portion may continue to expand somewhat, but will be

---

[3] That clause reads: "said limited expansion portion including limiting means preventing further expansion of such portion beyond said taut position by further fluid injected into the chamber in addition to the initial injected fluid . . . ."

hindered from expanding. The second cover portion will expand to a greater degree, and this differential in expansion will lead to an expansion only of the tissue over the second cover portion.

Defendants' motion essentially is an attempt to relitigate issues they previously raised in the above-captioned action, which was decided in the February 23, 2006 Order. There is no basis for the court to revisit these issues yet again. "A motion for reconsideration should not raise new arguments that could have been made in support of the original motion, or ask the court to rethink a decision that it has already made." Agere Systems, 2004 U.S. Dist. LEXIS 17811, at *3 (omitting internal quotation marks and citations). In light of the interest in finality, parties are not free to relitigate issues the court has already decided. For these reasons, defendants' motion for reconsideration of this claim construction shall be denied.

## II.    Method Steps (e) and (f) of Claim 24

Claim 24 includes method steps (e) and (f),[4] which defendants had urged must be performed in the order laid out in the claim, while plaintiffs had disagreed with this position.

Defendants continue to claim that it does not make sense that step (e) could be performed after step (f). Yet the defendants' expert witness, Dr. Jack Fisher, testified that the surgeon must make an incision before the expander device could be removed, and that such an incision could be made through expanded tissue. (Doc. No. 133, 104:2-105:13); (Doc. No. 134, 28:8-16, 32:22-33:5, 37:15-23). Perhaps the most common order of operation would be for a surgeon to make such an incision, remove the device, and then perform additional cutting of expanded tissue to form a flap. This order, however, would allow some severing of the edges, step (f), to be conducted before the removal of the

---

[4] The applicable language is: "(e) Collapsing and removing the soft tissue expander device from the pocket; (f) Severing edges of the expanded layer from surrounding soft tissue to form a differentially expanded tissue flap; and . . ."

expander device, step (e). Furthermore, while it might be inconvenient for a surgeon to work around the expander device, it is nonetheless conceivable that a surgeon may first sever the edges of the expanded tissue to form a flap, and only then remove the expander device. Therefore, it does not appear to be absolutely necessary that steps (e) and (f) be conducted in that order. As this court noted in the February 23, 2006 order, steps are not fixed in the order presented unless the steps of the method actually require an order. Interactive Gift Express, Inc. v. Compuserve, Inc., 256 F.3d 1323, 1342 (Fed. Cir. 2000).

As discussed above, in order to prevail, defendants must point to an intervening change in controlling law, the emergence of new evidence not previously available, or the need to correct a clear error of law or to prevent a manifest injustice. They have not done so, and may not relitigate this issue here.

### III.  "Conventional manner" Qualifier of Claims 24 and 31

At the *Markman* hearing, the parties argued how to construe clauses in claims 24 and 31 that included the term "collapsed," (Doc. No. 132, 147:9-157:6), (Doc. No. 134, 9:19-17, 54:12-22, 66:24-68:9). In construing these clauses, this court believed that "collapsed" generally meant completely empty of saline solution, but noted that the written description twice referred to the "conventional manner" of implantation. Plaintiff's opening claim construction brief noted that "[c]onventional procedures in use at the time of patent's [sic] application included introducing some amount of saline solution to facilitate the handling and placement of these devices during implantation." In support of this contention, plaintiff presented the declaration of an expert in the field, Dr. Eric D. Austad, who described "procedures [that] would be typical of those followed by plastic and reconstructive surgeons in the early 1980's." (Austad Dec. ¶ 57). With respect to those procedures he averred that:

> [a]t the time of implantation, the collapsed tissue expander need not be empty in order to fit within this more restricted area. Surgeons may introduce some relatively small volume of fluid into the expander to facilitate its handling and proper positioning within the pocket.

Id. ¶ 67.

This court determined that "collapsed," taken in context, might not require a complete absence of saline. Therefore, this court included the qualifying language "at this time and without the knowledge of the 'conventional manner.'"

Again, defendants have not pointed to an intervening change in controlling law, the emergence of new evidence not previously available, or the need to correct a clear error of law or to prevent a manifest injustice. They may not, therefore, relitigate this issue here.

### *Conclusion*

For the reasons set forth above, and in the February 23, 2006 Memorandum Opinion entered in the above-captioned civil action, this motion for reconsideration shall be and hereby is **DENIED**.

By the court,

/s/ Joy Flowers Conti
Joy Flowers Conti
United States District Judge

Dated: August 15, 2006

cc: Attorneys of record